UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:23-CV-00102-GNS-HBB

KUMSOOK "KIM" OH HUFF                                               PLAINTIFF

v.

CASEY COUNTY, KENTUCKY et al.                                       DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment (DN 92), Defendants' Motion for Leave to File Excess Pages (DN 93), and Plaintiff's Motion for Leave to File Excess Pages (DN 101). The motions are ripe for adjudication.

## I.    STATEMENT OF FACTS AND CLAIMS

On the evening of August 22, 2022, Plaintiff Kumsook "Kim" Oh Huff ("Huff") was pulled over for driving erratically by a deputy of the Casey County Sheriff's Department.[1] (Schoenbachler Dep. 46:20-47:9, Sep. 10, 2024, DN 100-4; Defs.' Mot. Summ. J. Ex. 3, at 1-2). Based on the results of field sobriety tests, Huff was arrested and transported to the Casey County Detention Center ("CCDC"). (Schoebachler Dep. 61:19-62:12; Defs.' Mot. Summ. J. Ex. 3, at 1-2). Upon arrival, Huff was strip searched because she was arrested for suspected drug use,

---

[1] Another deputy and an officer from the Liberty City Police Department also responded to the traffic stop. (Goodpaster Dep. 21:25-22:2, Sep. 10, 2024, DN 100-5; Christian Dep. 42:4-15, Oct. 28, 2024, DN 92-7; Defs.' Mot. Summ. J. Ex. 3, at 1-2, DN 92-4). While Huff asserted claims in this action against the Casey County Sheriff, Sheriff Chad Weddle, Deputy Aaron Schoenbachler, Deputy Ron Goodpaster, the City of Liberty, Liberty City Police, Police Chief Steven Garrett, and Officer Hunter Christian, those claims have been dismissed. (2d Am. Compl. ¶¶ 5-13, 100-104, 111-148, DN 57; Stipulation Partial Dismissal, DN 83).

pursuant to jail policy. (Durham Dep. 19:20-21:9, Nov. 6, 2024, DN 100-12). Huff was then moved to a holding cell. (Winans Aff. ¶ 29, Mar. 31, 2025, DN 92-9).

Around 2:15 a.m., Huff asked to see a nurse because she was shaking, drooling, and hyperventilating. (Huff Dep. 103:17-104:18, Sep. 19, 2024, DN 100-1; Durham Incident Report 1, DN 100-10). Sergeant Keith Durham ("Durham") told her she could see a nurse when one arrived in the morning. (Durham Incident Report 1). Durham also made a comment to Huff along the lines of "there aren't many people here like you around here." (Durham Dep. 66:19-24). Huff, who had immigrated from the Republic of Korea, perceived his comment as referring to her Korean ethnicity, while Durham avers he was referring to the fact that most people detained on relatively minor charges don't exhibit such erratic behavior. (Huff Dep. 10:18-23, 133:21-135:18; Durham Dep. 66:19-68:16). Still, Durham removed Huff from her cell and took her to the booking area to calm down, then Deputy Jailer Samantha Winans ("Winans") instructed Huff to breathe in through her nose and out through her mouth and brought her water. (Huff Dep. 106:11-24; Winans Aff. ¶ 33). After her symptoms abated, Huff was returned to her cell. (Durham Dep. 55:3-23; Winans Aff. ¶ 33). When CCDC nurse Kelly Hicks arrived a few hours later, she examined Huff, noting that Huff's blood pressure was elevated but finding no cause for concern. (Huff Dep. 109:8-14; Durham Dep. 79:18-80:20; Jail Med. Recs. 1-2, DN 100-11).

Staff reported that Huff "screamed, cried, hollered, and hit the door all night long." (Garner Dep. 28:15-29:14, Nov. 6, 2024, DN 100-16; Garner Incident Report 1, DN 100-15). Shortly after 7:00 a.m., Huff began hyperventilating again. (Todd Aff. ¶¶ 1, 4, Apr. 7, 2025, DN 92-17). Sergeant Chad Garner ("Garner") told Huff to "quit acting like a child." (Garner Incident Report 1). Huff was once again moved to the booking area and given water. (Garner Incident Report 1). Deputy Jailer Elizabeth Todd ("Todd") then escorted Huff to the recreation area to get some fresh

2

air, and Huff fell in the yard and skinned her knee. (Todd Aff. ¶¶ 6-7; Huff Dep. 109:15-110:5). Garner recalled Huff trying to vomit while she was outside in the recreation yard. (Garner Dep. 21:12-15, 21:24-25, 22:14-18; Garner Incident Report 1). Garner thought that Huff exhibited fast-paced breathing to make herself sick—he did not believe that Huff's conduct was the result of a mental health episode. (Garner Dep. 32:12-16, 39:3-6; Garner Incident Report 1). Garner testified that he could not recall if Huff had asked for a nurse or doctor, but that she would have been given access to a medical provider if she had made that request. (Garner Dep. 31:10-32:4, 42:14-16).

Later in the day, Huff was escorted by Garner and Todd to the courthouse for a hearing. (Garner Incident Report 1). Garner characterized Huff as engaging in a temper tantrum or acting like a child during the trip to the courthouse. (Garner Dep. 20:8-21:24, 31:4-9; Garner Incident Report 1). At one point, a video clip shows Garner holding Huff by her arm because he believed that she was attempting to fall. (Garner Dep. 24:6-13). At least twice, Todd grabbed Huff by her waistband to keep her from falling. (Garner Dep. 26:17-21; Garner Incident Report 1). Huff complained about Todd's actions, and Garner told Todd to stop. (Garner Dep. 26:22-25). Garner observed that once Huff reached the courthouse her demeanor changed, and when returning to the jail Huff was able to walk without assistance even though she was wearing shackles and cuffs. (Garner Dep. 24:14-25:1, 40:8-41:8).

After her hearing, Huff was released from custody, and the charge against her was eventually dismissed. (Huff Dep. 117:12-118:6; Garner Incident Report 1-2; CourtNet Report 1, DN 100-6). Huff then filed this civil rights action. (Compl., DN 1). She sued Casey County—naming present Casey County Jailer Mike Woodrum in his official capacity—and former Casey County Jailer Tommy Miller, Durham, Winans, Gardner, and Unknown Deputy Jailers Nos. 1-9 ("Casey County Jail Defendants") in their individual capacities, alleging they violated her rights

3

under federal and state law. (2d Am. Compl. ¶¶ 14-21, 105-148). Casey County and Casey County Jail Defendants (collectively, "Casey County Defendants") have moved for summary judgment. (Defs.' Mot. Summ. J., DN 92). Casey County Defendants and Huff have also moved for leave to file excess pages. (Defs.' Mot. Leave File Excess Pages, DN 93; Pl.'s Mot. Leave File Excess Pages, DN 101).

## II.    JURISDICTION

The Court has jurisdiction over this action based on federal question jurisdiction pursuant to 28 U.S.C. § 1331. This Court has jurisdiction over the state law claims through supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

## III.    STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party moving for summary judgment may satisfy its burden [of] show[ing] that there are no genuine issues of material fact simply 'by pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case . . . .'" *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). Similarly, the movant may meet its burden by offering evidence negating an essential element of the non-moving party's claim. *See Dixon v. United States*, 178 F.3d 1294, 1999 WL 196498, at *3 (6th Cir. 1999).

After the movant either shows "that there is an absence of evidence to support the nonmoving party's case," or affirmatively negates an essential element of the non-moving party's claims, the non-moving party must identify admissible evidence that creates a dispute of fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 247-48 (1986). While the Court must view the evidence in a light most favorable to the non-moving party, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). "The mere existence of a scintilla of evidence in support of the [moving party's] position [is] [] insufficient; there must be evidence on which the jury could reasonably find for the [moving party]." *Anderson*, 477 U.S. at 252.

## IV.    DISCUSSION

### A.    Defendants' Motion for Summary Judgment

#### 1.    *Unknown Deputy Jailer Nos. 1-9*

In their motion, Casey County Defendants seek dismissal of any claims against Unknown Deputy Jailer Nos. 1-9. (Defs.' Mem. Supp. Mot. Summ. J. 13-14, DN 92-1). These "parties" are merely placeholder defendants for whom a plaintiff may substitute the proper named parties once their identities are known.

In this case, however, Huff has made no such substitution for Unknown Deputy Jailer Nos. 1-9. "The Sixth Circuit has held that the substitution of a 'John Doe' defendant with a named party is not a 'mistake concerning the proper party's identity' for purposes of Rule 15(c)(1)(C)(ii) but is, instead, an addition of a new party." *Kelmendi v. Hogan*, No. 20-12354, 2022 WL 1175665, at *2 (E.D. Mich. Apr. 20, 2022) (quoting Fed. R. Civ. P. 15(c)(1)(C)(ii)) (citing *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 319 (6th Cir. 2010); *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996)). Such substitutions do not relate back under Fed. R. Civ. P. 15 or toll the applicable statute of limitations. *See Cole v. Taber*, No. 05-2845 MA/P, 2007 WL 9706390, at *3-4 (W.D. Tenn. Oct. 4, 2007). Any claims against Unknown Deputy Jailer Nos. 1-9 were required to have been asserted no later than August 22 or 23, 2023, one year after Huff's detention at the

CCDC. *See Wright v. Louisville Metro Gov't*, 144 F.4th 817, 824 (6th Cir. 2025) (noting that federal courts look to a state's personal injury limitations period for Section 1983, which is one year in Kentucky). In addition, the deadline to amend the pleadings was March 8, 2024. (Scheduling Order, DN 53). Because Huff failed to address this issue in her response, she has conceded that these time-barred claims against Unknown Deputy Jailer Nos. 1-9 should be dismissed. *See Paul v. Whitley Cnty. Det. Ctr.*, 712 F. Supp. 3d 907, 922 (E.D. Ky. 2024) ("[A] plaintiff . . . concedes a defense when they fail to respond to the defendant's argument." (second alteration in original) (quoting *4th Leaf, LLC v. City of Grayson*, 425 F. Supp. 3d 810, 823 (E.D. Ky. 2019))). The motion for summary judgment is granted on this basis.

### 2. *Federal Claims*

#### a. **42 U.S.C. § 1983**

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001) (citation omitted). Two elements are required to state a claim under Section 1983: "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *see Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "Absent either element, a [S]ection 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991). In the Second Amended Complaint, Huff alleges that Durham, Winans, and Garner violated her rights under the Fourth and Fourteenth Amendments to the U.S. Constitution and the Kentucky Constitution.[2] (2d Am. Compl. ¶¶ 105-107).

---

[2] While her Section 1983 claim is in part based on a violation of her rights under the Kentucky Constitution, "such a claim is not cognizable under [Section] 1983 as that statute is meant to provide a cause of action for violation of federally created rights, not state constitutions." *Overall*

### i.    Use of Force

Huff does not address Casey County Defendants' argument that any physical force used was not excessive. *Degolia v. Kenton Cty.*, 381 F. Supp. 3d 740, 759-60 (E.D. Ky. 2019) ("[I]t is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."  (second alteration in original) (citation omitted)).  In her response, Huff alludes to excessive force in the context of her other claims—she asserts that her medical episode "was exacerbated by disparaging conduct and an excessive use of force" and that she "experienced excessive force and disparagements *because of* her Korean ancestry."  (Pl.'s Resp. Defs.' Mot. Summ. J. 15, 19).  She does not, however, reference the relevant standards governing an excessive force claim or otherwise explain why any force used was excessive.  Regardless, Huff's claim also fails on its merits.

While housed at the CCDC, Huff was a pre-trial detainee.  The Supreme Court has distinguished the rights of pre-trial detainees from those of sentenced prisoners.  *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."  (citations omitted)).  The Due Process Clause of the Fourteenth Amendment is the proper avenue for a pre-trial detainee bringing a Section 1983 action for excessive force.  *See Kingsley v. Hendrickson*, 576 U.S. 389, 393 (2015).  The Supreme Court has "not yet decided [the] question" whether "a pretrial detainee can bring a Fourth Amendment claim based on the use of excessive force by a detention facility employee."  *Id.* at 408 (Alito, J., dissenting).  The Sixth Circuit has also not yet

---

*v. Oakland Cnty.*, 670 F. Supp. 3d 437, 451 (E.D. Mich. 2023) (citing *Luckett v. Turner*, 18 F. Supp. 2d 835, 839 (W.D. Tenn. 1998); *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995)).

weighed in on this issue. Therefore, the Court will not consider a Fourth Amendment violation under Section 1983 and will instead focus its analysis on the Fourteenth Amendment.

Although the Sixth Circuit has "historically analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric[,]'" the Supreme Court's ruling in *Kingsley v. Hendrickson* has since modified that analysis. *See Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) (citation omitted), *abrogated on other grounds by Brawner v. Scott Cnty.*, 14 F.4th 585, 591-97 (6th Cir. 2021); *see also Brawner*, 14 F.4th at 596 ("Given *Kingsley*'s clear delineation between claims brought by convicted prisoners under the Eighth Amendment and claims brought by pretrial detainees under the Fourteenth Amendment, applying the same analysis to these constitutionally distinct groups is no longer tenable.").

Under the *Kingsley* standard, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 397. This standard should not be applied mechanically and "turns on the 'facts and circumstances of each particular case.'" *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The determination must be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* (citation omitted). The analysis also defers to "'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (alteration in original) (quoting *Wolfish*, 441 U.S. at 540). The Supreme Court has articulated a non-exhaustive list of factors to be balanced in making this determination:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* (citation omitted).

The record reflects that both incidents involving the use of force relate to Deputy Jailer Elizabeth Todd ("Todd"). Todd, however, is not a named party in this action, and to the extent that she was one of the Unknown Deputy Jailers sued in their individual capacity, Huff failed to timely name Todd as a party. Therefore, Casey County Defendants are entitled to summary judgment on the Section 1983 claim relating to any use of force by Todd. Nevertheless, the merits of these excessive force claims against Todd are addressed below because such an analysis is needed to determine whether Huff has proven a constitutional violation to support her *Monell* claim against Casey County.

### a)    Entry to the Recreation Yard

While being housed at the CCDC, Huff was moved to the recreation yard to get fresh air after she had hyperventilated. (Todd Aff. ¶¶ 4, 6). As Todd escorted Huff to the recreation area, Huff claims that Todd pushed her into the recreation area, which has a concrete floor. (Huff Dep. 109:21-110:1, 137:25-138:8). Todd acknowledged that Huff fell, but denied intentionally exerting any force against Huff and maintained that any contact was incidental to taking Huff to the recreation yard. (Todd Aff. ¶¶ 7-9). As a result of her fall, Huff scraped her knees. (Huff Dep. 110:1-2, 138:8-15; Pl.'s Resp. Defs.' Mot. Summ. J. Ex. 17, at 1-2, DN 100-17).

Huff has not presented any evidence that she sought medical treatment for her scraped knees. In fact, she did not even notice the condition of her knees until after she was released from the CCDC and was at home showering. (Huff Dep. 138:8-10). As Huff testified, "I scraped my two knees. . . . But that wasn't—that's nothing. I mean, it's not—I—I don't call that injury." (Huff Dep. 110:1-5)

As a matter of law, this injury was de minimis and is insufficient to support an excessive force claim under Section 1983. *See Corsetti v. Tessmer*, 41 F. App'x 753, 755-56 (6th Cir. 2002)

(affirming dismissal of a Section 1983 claim in which the plaintiff alleged "he received only minor cuts that did not require medical attention"); *Wallace v. Coffee Cnty.*, 852 F. App'x 871, 878 (6th Cir. 2021) (describing small bruises, minor cuts, and "vague injuries" as de minimis). Casey County Defendants are entitled to summary judgment on this claim.

### b)    Escort in the Hallway

When Huff was being transported from the CCDC to the Casey County Judicial Center for a hearing, she had difficulty walking and almost fell. (Huff Dep. 110:5-11, 112:8-10). During that time, Huff stated that Todd grabbed her pants twice. (Huff Dep. 110:12-18). Todd acknowledged grabbing Huff's pants because Todd believed that Huff was in danger of falling. (Todd Aff. ¶¶ 14-16). After Huff told Todd to stop, Todd did not grab Huff's pants again. (Todd Aff. ¶ 17; Huff Dep. 110:16-20).

As to those two instances, Huff testified:

> Q.    . . . Do you allege that jail staff caused you any physical harm or injury during your incarceration?
> A.    No. No. Only that woman just keep jerking me behind my back. That was a very irritate my private part when she did that, because I got no underwear, and that uniform just stuck me around and that was a very discomfort feeling.
> Q.    Okay.
> A.    And that's the only time.
> Q.    So you've described that as uncomfortable?
> A.    Yeah.
> Q.    Very irritating?
> A.    Yeah.

(Huff Dep. 137:6-19). Huff has not presented evidence that she sought medical treatment for these instances either.

Like the other claim of excessive force against Todd, any injury arising from Todd grabbing Huff's pants resulted in a de minimis injury at best. *See Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (being merely uncomfortable after being exposed to pepper spray was

10

insufficient to support a Section 1983 excessive force claim); *Robinson v. Corr. Corp. of Am.*, 14 F. App'x 382, 383 (6th Cir. 2001) (allegations that plaintiff "suffered emotional distress, embarrassment, humiliation, and itching" amount to "at most only de minimis physical injury"); *see also Hart v. Suffolk Cnty.*, No. 17-CV-05067 (LGD), 2023 WL 5720075, at *20 (E.D.N.Y. Sep. 5, 2023) (dismissing the excessive force claim where the staff member "merely held [the plaintiff's] elbow for approximately thirty seconds while guiding her down the medical corridor"); *Costanzo v. Santacroce*, No. 16-CV-03871 (JMA) (ARL), 2023 WL 4247636, at *8 (E.D.N.Y. June 29, 2023) ("[T]hey employed only de minimis physical force as they escorted her from the medical unit to the female property unit; . . . she was uninjured when they deposited her at the female property unit. Based on their testimony, their actions were entirely inconsistent with a finding that they used excessive force against Irena." (internal footnote omitted)). Therefore, Casey County Defendants are also entitled to summary judgment on this basis for Huff's excessive force claim.

### ii.    Equal Protection Clause

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). The Supreme Court has recognized that "[p]risoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citation omitted). "When . . . [a] plaintiff alleges that the defendant has targeted a suspect class such as religion or national origin, [courts] apply the same framework used to decide race discrimination claims under Title VII." *Speed Way Transp., LLC v. City of*

*Gahanna*, No. 24-3607, 2025 WL 848315, at *2 (6th Cir. Mar. 18, 2025) (citing *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000)).

To prove an equal protection claim, Huff must prove: "(1) '[she] is similarly situated with other [inmates] who received' more favorable treatment; and (2) [her] discriminatory treatment was based on . . . [her membership in a protected class]." *Martinez v. White*, No. 19-5377, 2020 WL 1888855, at *2 (6th Cir. Feb. 20, 2020) (fourth alteration in original) (quoting *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001)). A plaintiff may prove such a claim either through direct or indirect evidence based on the burden shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011) (citing *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008)). In her response, Huff failed to address whether she was replying on direct or indirect proof to support this claim. (Pl.'s Resp. Defs.' Mot. Summ. J. 18-19).

### a)    Direct Evidence

"Direct evidence is composed of only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor. Isolated and ambiguous comments are insufficient to support a finding of direct discrimination." *Umani*, 432 F. App'x at 458-59 (internal citation omitted) (citing *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 239 (6th Cir. 2005)).

To support her equal protection claim, Huff cites Durham's testimony:

> Q.    She also alleges that you made a comment that "There are not many people like you around here." Do you recall making any comment like that?
> A.    I did, but I was not referring to a racial thing. It was—I was talking about her behavior of beating on the door over a misdemeanor charge.

(Pl.'s Resp. Defs.' Mot. Summ. J. 18 (citation omitted); Durham Dep. 66:19-24). Durham expressly denied any animus based on Huff's national origin in making that statement. (Durham

Dep. 68:3-6). Huff contends that this testimony "evidences a possible equal protection issue, i.e., that Kim was denied proper medical intervention and experienced excessive force and disparagements *because of* her Korean ancestry." (Pl.'s Resp. Defs.' Mot. Summ. J. 19).

"The use of racially discriminatory language can provide some evidence of a discriminatory purpose when that language is coupled with some additional harassment or constitutional violation." *King v. City of Eastpointe*, 86 F. App'x 790, 814 (6th Cir. 2003) (Moore, J., concurring in part and dissenting in part). As the Sixth Circuit has explained, however, "direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged [] action was motivated at least in part by prejudice against members of the protected group." *Wilson v. Ohio*, 178 F. App'x 457, 463 (6th Cir. 2006) (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003)). To rely on Durham's statement, a jury would have to infer that Durham was intending to deny Huff access to medical care and the denial of medical care was due to the fact that Huff is of Korean descent. Under Sixth Circuit precedent, direct evidence of discrimination usually contains slurs or an express statement that a prohibited reason was the determining factor in making a decision. *See, e.g.*, *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1249 (6th Cir. 1995) (holding that supervisors' use of racial slurs on multiple occasions constituted direct evidence of racial discrimination); *Taylor v. Bd. of Educ. of Memphis City Sch.*, 240 F. App'x 717, 720 (6th Cir. 2007) ("Given Harris's role in the hiring decision, her statements that Morano was hired to maintain racial balance and that the Board should have attracted more white applicants, plainly indicate that unlawful discrimination may have been at least a motivating factor in the Board's hiring decision."). Accordingly, Durham's statement is not direct evidence of national origin discrimination to support the equal protection claim.

### b)    Indirect Evidence

In the absence of direct evidence, an inmate must prove a prima face case of national origin discrimination by presenting evidence showing:  "(1) [she] was a member of a protected class; (2) [she] was qualified for favorable treatment; (3) [she] was subjected to an adverse decision; and (4) [she] was treated differently than similarly situated non-protected individuals."  *Hernandez v. Simmons*, No. 3:15-CV-00954, 2018 WL 4566823, at *15 (M.D. Tenn. Sep. 21, 2018) (quoting *McKinney v. Smith*, No. 1:18-CV-603, 2018 WL 3197434, at *6 (W.D. Mich. June 19, 2018)).  In comparing Huff to other prisoners to show they were similarly situated, "the comparative [prisoner] 'must have dealt with the same [decision maker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or [the defendant's] treatment of them for it.'"  *Id.* (alterations in original) (quoting *Umani*, 432 F. App'x at 460).

In her response, Huff does not address her burden to present a prima facie case and fails to show that other similarly situated inmates were treated differently than she was.  Therefore, as a matter of law, Huff has failed to establish an equal protection claim based on indirect evidence.  *See Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) ("Coleman did not present any evidence that Bowerman treated him differently than other inmates who exercised their rights under the prison grievance system."); *Dunn v. Ky. Dep't of Corr.*, No. 5:12-CV-192, 2014 WL 1319777, at *7 (W.D. Ky. Mar. 28, 2014) ("Although Dunn's argument appears to be that he is being denied equal protection, he has not demonstrated that Defendants treated similarly situated individuals in a disparate manner.  To raise such a claim, Dunn would have to show that 'similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest.'  . . . Dunn alleges that inmates of other religious

14

faiths are provided with more desirable options but offers no evidence to support this allegation." (internal citations omitted)). Summary judgment is therefore granted to Casey County Defendants on this claim.

### iii.    Failure to Provide Medical Care

In her response, Huff asserts that there is a triable issue as to whether Casey County Defendants failed to provide her medical care in violation of Section 1983. (Pl.'s Resp. Defs.' Mot. Summ. J. 15-18). Even if Huff properly alleged a claim for the failure to provide medical care in her Second Amended Complaint, she represented that she was not pursuing such a claim. In discovery, Casey County Defendants asked Huff to "[i]dentify, with specificity, each act which you allege, in paragraph 106 of your Complaint,[3] deprived you of your constitutionally protected rights." (Pl.'s Answers Defs.' Interrogs. 9, DN 92-2). Huff responded that "Plaintiff's treatment in the jail violates state law on the performance of strip searches and the statements and comments made by jail staff—as detailed in the complaint—indicated an animus toward Plaintiff due to her race and national origin." (Pl.'s Answers Defs.' Interrogs. 9). Huff did not mention any failure to provide medical care. (*See* Pl.'s Answers Defs.' Interrogs. 9).

Under Fed. R. Civ. P. 26(e), a party who has responded to an interrogatory must supplement a response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." This rule applies equally to contention interrogatories, which are "interrogator[ies] that seek[] to clarify the basis for or scope of an adversary's legal claims." *Dodd v. Hendrickson USA, LLC*, 349 F.R.D.

---

[3] In Count II, Huff alleges that the Deputy Jailers "deprived Plaintiff of her constitutionally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution . . . ." (2d Am. Compl. ¶ 106).

286, 296 (W.D. Ky. 2025) (citing *Starcher v. Corr. Med. Sys., Inc.*, 144 F.3d 418, 421 n.2 (6th Cir. 1998)).  Yet there is no evidence in the record that Huff supplemented this response or otherwise indicated that she was bringing a claim against Casey County Defendants for failing to provide medical care.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  The Sixth Circuit has held that harmlessness is "key under Rule 37, not prejudice." *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003) (internal quotations omitted).

> To establish whether the responding party has met its burden of demonstrating harmlessness, the following five factors must be considered:  (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Eaton Corp. v. Angstrom Auto., Grp., LLC*, No. 1:20-CV-893, 2023 WL 5968005, at *2 (N.D. Ohio Sep. 14, 2023) (internal quotation marks omitted) (citation omitted).  Furthermore, courts have "found that parties are properly bound by their responses to such interrogatories seeking a description of their contentions in a case."  *Tap Pharm. Prods., Inc. v. Owl Pharms., L.L.C.*, No. 1:99CV2715, 2002 WL 34381130, at *1 (N.D. Ohio Sep. 16, 2002) (citing *Transclean Corp. v. Bridgewood Serv., Inc.*, 290 F.3d 1364, 1373-74 (Fed. Cir. 2002) (applying Eighth Circuit law) (upholding grant of summary judgment of infringement as discovery sanction where patent defendant did not assert noninfringement as a defense in response to contention interrogatory seeking to discover defendant's defenses)).  Huff has not met her burden to demonstrate harmlessness.  Huff's pivot changes the relevant factual and legal questions underlying her Fourteenth Amendment claim, and because discovery has long since closed, allowing Huff to rely

16

on a new theory would prejudice Defendants. *Franklin Am. Mortg. Corp. v. First Educators Credit Union*, No. 3:11-0749, 2013 WL 5637033, at *3 (M.D. Tenn. Oct. 16, 2013) ("Since this claim by [the plaintiff] was not disclosed until after the deadlines for completion of discovery, . . . to allow [the plaintiff] to assert this claimed breach of contract at trial would materially prejudice [the defendant].").  In any event, Huff's claim for the failure to provide medical care claim fails on its merits.

"[T]he Fourteenth Amendment imposes on the government an affirmative duty to provide medical care to all those it takes into its custody . . . ." *Colson v. City of Alcoa*, 37 F.4th 1182, 1187 (6th Cir. 2022) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989)).  To make such a claim, a plaintiff must show:  "(1) an objectively serious medical need; and (2) that the defendants, analyzed individually, acted (or failed to act) intentionally and either ignored the serious medical need or 'recklessly failed to act reasonably to mitigate the risk the serious medical need posed.'"  *Grote v. Kenton Cnty.*, 85 F.4th 397, 405 (6th Cir. 2023) (quoting *Greene v. Crawford Cnty.*, 22 F.4th 593, 607 (6th Cir. 2022)).

First, "[a] serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Id.* at 406 (internal quotation marks omitted) (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)).  Put another way, a plaintiff must "show a medical need objectively 'serious' enough to require *some* medical treatment, meaning that the condition posed a substantial risk of serious harm if left untreated."  *Lovell v. Clermont Cnty. Sheriff's Off.*, No. 1:23-CV-114, 2026 WL 16447, at *21 (S.D. Ohio Jan. 2, 2026).

"A detainee's psychological needs may constitute serious medical needs, especially when they result in suicidal tendencies."  *Horn by Parks v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660

17

(6th Cir. 1994) (citations omitted).  Courts have held, however, that panic attacks alone are not serious medical needs.[4]  For example, two of our sister courts have found that a plaintiff who experienced panic attacks—with symptoms including shortness of breath, racing heart, chest and stomach pain, and shaking, but not fainting or suicidal thoughts—did not present any "evidence that she ever suffered any lasting effects from her panic attacks or that her panic attacks caused her to be a danger to herself or others[,]" and consequently did not establish that panic attacks were so "sufficiently serious to pose a substantial risk of serious harm." *Colson*, 458 F. Supp. 3d at 922 (internal citation omitted); *Jackson v. Williams*, No. 10-CV-14985, 2012 WL 3597187, at *8 (E.D. Mich. Aug. 20, 2012) (internal quotation marks omitted).  Another  court similarly held that the plaintiff did not demonstrate that he had a serious medical need because "[t]here is no evidence that the panic attack, cold sweats, tremors and nightmares placed plaintiff's health in jeopardy or caused him permanent harm.  The very nature of these symptoms suggests that they were temporary." *King v. Frank*, 371 F. Supp. 2d 977, 986 (W.D. Wis. 2005).  When analyzing a delay in medical care, other courts have likewise found that a panic attack does not constitute substantial harm.  *See House v. Buckhalter*, No. 5:13-CV-195-DCB-MTP, 2016 WL 1046918, at *3 (S.D. Miss. Jan. 20, 2016) ("Plaintiff has failed to establish that he suffered any substantial harm as a

---

[4] *But see Reyes v. City of Trenton*, No. 05-1882(MLC), 2007 WL 1038482, at *8 (D.N.J. Mar. 30, 2007) ("Plaintiffs allege that Reyes suffered panic attacks when she was arrested.  Panic attacks are easily recognized by a lay person as necessitating medical attention, and thus, constitute a serious medical need."  (citation omitted)).  Our sister court addressed *Reyes*, stating:

> [T]he *Reyes* court did not provide any explanation of the analysis that led to this conclusion.  Moreover, as an unpublished, out-of-circuit opinion, *Reyes* has no binding effect on this Court.  Respectfully, for the reasons that follow, the Court disagrees with the *Reyes* [c]ourt's conclusion that a panic attack is easily recognized by a layperson as necessitating medical attention.

*Colson v. City of Alcoa*, 458 F. Supp. 3d 887, 922 (E.D. Tenn. 2020) (internal citation omitted), *rev'd on other grounds*, 37 F.4th 1182 (6th Cir. 2022).  This Court agrees and does not find *Reyes* persuasive.

result of any delay in medical care. Plaintiff alleges that the delay in care caused him to suffer from panic attacks. Such discomfort, however, does not constitute substantial harm." (citing *Hood v. Montgomery Cnty.*, No. H-12-0726, 2013 WL 4875051, at \*13 (S.D. Tex. Sep. 11, 2013) (finding that a plaintiff's withdrawal symptoms, which included extreme anxiety and panic attacks, were not the kind of substantial harm that rises to the level of a constitutional violation)), *report and recommendation adopted*, 2016 WL 1050302 (S.D. Miss. Mar. 16, 2016).

Huff reported symptoms comparable to those discussed above—her symptoms included drooling, shaking, and difficulty breathing and walking, and she screamed and cried throughout the night. (Huff Dep. 103:17-105:18; Garner Incident Report 1). Huff's panic attacks did not cause her to lose consciousness, stop breathing, or have suicidal thoughts. (*See* Huff Dep. 103:17-105:18). Moreover, Huff recognized that her symptoms subsided after she calmed down. (Huff Dep. 107:20-108:1). Huff has not provided any evidence to demonstrate that her panic attacks, left untreated, posed a threat of serious harm; thus, Huff has not shown that her panic attacks were a serious medical need. Because Huff cannot satisfy the first element of her claim, Casey County Defendants are entitled to summary judgment on Huff's claim for failure to provide medical care.

### iv.    Strip Search Claim

In addition, Casey County Defendants seek summary judgment for any strip search claim asserted under Section 1983. (Defs.' Mem. Supp. Mot. Summ. J. 9-12). In Huff's response, however, she addresses the strip search claim under state law. (Pl.'s Resp. Defs.' Mot. Summ. J. 21-23). Therefore, to the extent that Huff has asserted a Section 1983 claim regarding a strip search, she has conceded that Casey County Defendants are entitled to summary judgment on that federal claim. *See Paul*, 712 F. Supp. 3d at 922 ("[A] plaintiff . . . concedes a defense when they fail to respond to the defendant's argument." (citing *4th Leaf, LLC*, 425 F. Supp. 3d at 823).

b.    *Monell* **Claim**

Under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), municipalities can be held liable for constitutional violations caused by an official policy or custom.  *See id.* at 690-91.  "[L]ocal governments are responsible only for 'their own illegal acts.'  They are not vicariously liable under [Section] 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal citation omitted) (citations omitted).

A plaintiff bringing a *Monell* claim must show that:  (1) his or her rights were violated; and (2) the municipality was responsible for the violation.  *See Doe v. Claiborne Cnty. by & through Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 505-06 (6th Cir. 1996).  "If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under [Section] 1983." *Westmoreland v. Butler Cnty.*, 29 F.4th 721, 731 (6th Cir. 2022)  (citation omitted).

As outlined above, Huff has failed to prove a constitutional violation committed by an individual employed by Casey County.  Therefore, Casey County is entitled to summary judgment on Huff's *Monell* claim.

c.    **42 U.S.C. § 1985(3)/42 U.S.C. § 1986**

Casey County Defendants seek dismissal of Huff's claims under 42 U.S.C. §§ 1985(3) and 1986.  (Defs.' Mem. Supp. Mot. Summ. J. 21-22).  Because Huff concedes that these claims fail, Defendants' motion is granted, and these claims are dismissed.  (Pl.'s Resp. Defs.' Mot. Summ. J. 15 n.90).

2.    *State Law Claims*

All of Huff's federal claims are dismissed, so only her state claims remain for assault and battery, intentional infliction of emotional distress, negligence, and vicarious liability.  "The Sixth

Circuit 'applies a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed—retaining residual jurisdiction "only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues."'" *Southard v. Newcomb Oil Co.*, No. 3:18-CV-803-CRS, 2019 WL 961988, at *3 (W.D. Ky. Feb. 27, 2019) (quoting *Packard v. Farmers Ins. Co. of Columbus, Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011)). Those factors do not weigh in favor of exercising jurisdiction in this case, and these claims are more properly addressed by the Casey Circuit Court. Therefore, because the claims over which this Court would have original jurisdiction are dismissed, the Court declines to exercise its supplemental jurisdiction over any state law claims Huff has asserted, and the state law claims are dismissed without prejudice. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.").

### B. Motions for Leave to File Excess Pages

Both Casey County Defendants and Huff have moved for leave to file excess pages in the memorandum in support and response, respectively. (Defs.' Mot. Leave File Excess Pages 1; Pl.'s Mot. Leave File Excess Pages 1). Those motions are well-taken and are granted.

### V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendants' Motion for Summary Judgment (DN 92) is **GRANTED IN PART**, and Plaintiff's federal claims are **DISMISSED WITH PREJUDICE**. Because the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, those claims are **DISMISSED WITHOUT PREJUDICE**.

      2.      Defendants' Motion for Leave to File Excess Pages (DN 93) and Plaintiff's Motion for Leave to File Excess Pages (DN 101) are **GRANTED**.

      3.      The Clerk shall strike this matter from the active docket.

**Greg N. Stivers, Judge**
**United States District Court**
March 6, 2026

cc:    counsel of record

22